UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


NATIONAL CASUALTY COMPANY                                    PLAINTIFF


VS.                                    CIVIL ACTION NO. 3:09CV526TSL-FKB


FRANKLIN COUNTY, MISSISSIPPI; FRANKLIN
COUNTY BOARD OF SUPERVISORS, ET AL.                          DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff National Casualty Company brought the present

action seeking a declaratory judgment that it has no duty to

defend or indemnify Franklin County, Mississippi for a lawsuit

filed against the County in 2008, while a law enforcement

liability insurance policy issued by National Casualty to the

County was in effect.  This cause is presently before the court on

the motion of defendants Franklin County, Mississippi and Franklin

County Board of Supervisors (Franklin County) to dismiss pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

National Casualty has responded to the motion.  Having considered

the memoranda of authorities submitted by the parties, the court

is of the opinion that National Casualty's complaint does not

state a viable claim for a declaratory judgment that it has no

duty to defend, and accordingly, that part of its complaint will

be dismissed.

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is "to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." Wright & Miller, Federal Practice and Procedure: Civil 3d § 1356 (2004). With the limited exception of those cases described in Rule 9, a complaint need only satisfy the "simplified pleading standard" of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). The Supreme Court has recently made clear that while Rule 8 is not exacting, it does "require[] a 'showing,' rather than a blanket assertion, of entitlement to relief," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), so that to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain enough factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 561-62, 127 S. Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 559, 127 S. Ct. 1955.

In determining whether the complaint is sufficient to state a claim, courts must "consider the complaint in its entirety, as well as other sources ... in particular, documents incorporated into the complaint by reference." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007). The court must accept all well-pleaded allegations in the complaint as true, and must construe all factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268, 114 S. Ct. 807, 810, 127 L. Ed. 2d 114 (1994). Thus, in addressing a motion to dismiss, a court should first review a complaint to determine what allegations are entitled to the assumption of truth. See Iqbal, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Id. at 1954. See Barnes v. Montgomery County, Md., Civil Action No. AW-09-2507, 2010 WL 1529277, 1 (D. Md. Apr. 15, 2010) (a court "need not, however, accept unsupported legal allegations, legal conclusions couched as

factual allegations, or conclusory factual allegations devoid of any reference to actual events") (citations omittted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 129 S. Ct. at 1954.

In its motion to dismiss, Franklin County maintains that upon comparing the complaint in the underlying lawsuit and the terms of the National Casualty policy, as required by Mississippi's duty to defend law, it is apparent that National Casualty's "no duty to defend" claims fail on their face, and that these claims should be dismissed with prejudice. It further contends that National Casualty's "no duty to indemnify" claims are not ripe at this point, and should be dismissed without prejudice, or alternatively, stayed pending resolution of the underlying litigation.

### The Underlying Litigation

In May 1964, in Franklin County, Mississippi, two African-American teenagers, Charles Moore and Henry Dee, were kidnapped, beaten and murdered by members of the White Knights of the Ku Klux Klan (the Klan). Although two Klan members, James Ford Seale and Charles Marcus Edwards, were arrested in November 1964 and charged with the crimes, two months later, the district attorney moved for dismissal of the charges against Seale and Edwards, citing a lack of evidence. More than forty years later, the case was reopened,

4

and in January 2007, Seale was indicted by a federal grand jury on three counts of conspiracy to kidnap Moore and Dee and of conspiracy to commit kidnapping which resulted in the deaths of Moore and Dee.  In return for immunity, Charles Edwards testified before the grand jury that indicted Seale.  On June 14, 2007, Seale was convicted on all counts and in August 2007, he was sentenced to life in prison.

A year later, in August 2008, Thomas Moore and Thelma Collins, for themselves and on behalf of all of Moore's and Dee's wrongful death beneficiaries (collectively, the Moore plaintiffs), filed a civil rights lawsuit against Franklin County in this court, alleging claims under 42 U.S.C. §§ 1981, 1983 and 1985,[1] based on allegations that Wayne Hutto and Kirby Shell, the Franklin County sheriff and deputy sheriff, respectively, at the time of the kidnappings and murders of Moore and Dee, conspired with the Klan and acted jointly and in concert with members of the Klan to deprive Moore and Dee of their constitutionally protected rights.[2]  In broad summary, the Moore plaintiffs alleged that at the time of the kidnappings and murders of their decedents,

---

[1]     The plaintiffs in the <u>Moore</u> case originally brought both federal civil rights claims and state law wrongful death and survival claims based on alleged conspiracy to commit murder, assault and battery and reckless disregard for the safety of the decedents.  In January 2009, the Moore plaintiffs voluntarily dismissed their state law claims.

[2]     See <u>Moore v. Franklin County, Miss.</u>, Civ. Action No. 3:08cv306TSL-FKB.

Franklin County had a policy to protect the Klan from investigation and prosecution and to provide the Klan with impunity for crimes of racial violence. They alleged that Sheriff Hutto and Deputy Shell carried out and acted in accordance with this policy in the Moore/Dee matter in that on the day of the young men's disappearances, Hutto and Shell became aware of facts from which they knew that Moore and Dee were exposed to an unusually grave risk of harm and yet they intentionally failed to take reasonable steps to prevent or repress the Klan kidnappings and murders of Moore and Dee.

Upon learning of the Moore complaint, Franklin County notified National Casualty of the suit. National Casualty agreed to defend Franklin County, subject to a reservation of rights, and then brought the present action, seeking a declaratory judgment that it is not obligated to defend or indemnify Franklin County under its law enforcement liability policy.

The National Casualty Policy and Its Complaint

In 2003, Franklin County secured insurance coverage from National Casualty under a policy of liability insurance. The policy was renewed annually, and was in effect in 2008 when the Moore lawsuit was filed. The policy, a claims made policy, provides coverage for "'loss' resulting from 'law enforcement wrongful act(s)' which arise out of and are committed during the course and scope of 'law enforcement activities' ... but only with

6

respect to 'claims' first made against the insured during the 'policy period' or Extended Reporting Period."  The policy defines loss as

> any monetary amount which the insured(s) are legally obligated to pay as a result of "law enforcement wrongful act(s)" covered by this Coverage Form and will include but not be limited to judgments and settlements, but "loss" will not include fines imposed by law or matters which may be deemed uninsurable under the law pursuant to which this Coverage Form will be construed.

A "law enforcement wrongful act" is defined as "any actual or alleged act, error or omission, neglect or breach of duty by the insured while conducting 'law enforcement activities' which results in (a) 'personal injury'; (b) 'bodily injury' (including mental anguish and emotional distress); or (c) 'property damage' ... caused by an 'occurrence.'"  "Personal injury" is defined to include, among other things, "[a]ssault and battery; [d]iscrimination...; ... [h]umiliation or mental distress; ... and [v]iolation of civil rights protected under 42 USC 1981 et sequential or State law."  Under the policy, the term "law enforcement activities" is defined to mean "[t]hose activities conducted by [the Franklin County Sheriff's Department]" and (b) "Departmentally approved activities which are declared in the application for this insurance."  In its complaint, National Casualty alleges that Franklin County is not entitled to a defense or indemnity under the policy in connection with the Moore lawsuit because no "covered 'law enforcement wrongful act'" or

7

"occurrence" is alleged in the Moore complaint.  It also alleges
that there is no duty to defend or indemnify based on two policy
exclusions, the "Deliberate Acts Exclusion," and the  "Prior
Knowledge Exclusion."

Analysis

Franklin County has moved to dismiss National Casualty's
Complaint for three reasons: (1) "law enforcement wrongful acts"
and "occurrences" are alleged in the Moore complaint; (2) the
"Deliberate Acts Exclusion" does not apply to the duty to defend;
and (3) the allegations related to the "Prior-Knowledge Exclusion"
fail to satisfy the pleading requirements of Twombly and Iqbal,
supra.

Under Mississippi law, which applies in this diversity
action, "[a] liability insurance company has an absolute duty to
defend a complaint which contains allegations covered by the
language of the policy, but it has absolutely no duty to defend
those claims which fall outside the coverage of the policy."
Sennett v. U.S. Fid. & Guar. Co., 757 So. 2d 206, 212 (Miss.
2000).  "Mississippi has adopted the 'allegations of the
complaint' rule (sometimes referred to as the eight-corners test)
to determine whether an insurer has a duty to defend," pursuant to
which the court reviews the allegations in the underlying
complaint to see whether it states a claim that is within or
arguably within the scope of the coverage provided by the

8

insurance policy.  Evanston Ins. Co. v. Neshoba County Fair Ass'n, Inc., 442 F. Supp. 2d 344, 346 (S.D. Miss. 2006) (citations omitted).  If the complaint alleges facts which are arguably within the policy's coverage, a duty to defend arises.  Id.

     The court has reviewed National Casualty's complaint in the case at bar, and finds therein nothing to suggest on what basis National Casualty contends the Moore complaint "does not allege covered 'law enforcement wrongful act[s]' or 'occurrences'."  The Moore complaint obviously alleges "law enforcement wrongful acts" and "occurrences," as those terms are defined in the policy.  "Law enforcement wrongful activity" is "any actual or alleged act, error or omission, neglect or breach of duty by the insured while conducting 'law enforcement activities' which results in ... 'personal injury' or 'bodily injury' ... caused by an 'occurrence.'"  "Law enforcement activities" are "those activities conducted by your Law Enforcement Department or Agency...."  See Nat'l Cas. Co. v. Young, Civ. Action No. 07-cv-4836, 2009 WL 2170105, at 4 (E.D. Pa. July 17, 2009)("When determining an insurance company's obligation to indemnify or defend the insured, courts have interpreted the phrase "law enforcement activities" as broadly encompassing impropriety or negligence by law enforcement officers in the course of their duties.")(internal citations omitted).

The Moore complaint plainly alleges that former Sheriff Hutto and former Deputy Shell–who collectively constituted Franklin County's entire Sheriff's Department, i.e., its "Law Enforcement Department"–aided the Klan's violent activities in Franklin County by refusing to investigate or prosecute crimes committed by the Klan and by covering up such crimes. In the case of Moore and Dee, in particular, the Moore plaintiffs charge that Hutto and Shell became aware that Moore and Dee had been kidnapped and beaten by members of the Klan, and knew the two young men were in grave danger, and yet intentionally failed to arrest those known to have been involved or to otherwise take reasonable steps to protect Moore and Dee. The Moore plaintiffs allege that Hutto, himself a member of the Klan, knew about the kidnapping of Moore and Dee by members of the Klan and yet when family members of the two young men came to him for information and assistance in finding them, Hutto did not tell them about the kidnapping and/or murders and instead, lied to the families about the young men's likely whereabouts. The Moore complaint further alleges that, despite having told the families he would try to locate Moore and Dee, Hutto never conducted any investigation. Further, once portions of the young men's bodies were found and the FBI commenced an investigation, Hutto is alleged to have deliberately provided false information to FBI agents to derail their investigation. Clearly, the Moore plaintiffs' charges involving

Hutto's and Shell's failure to investigate Moore's and Dee's disappearances, their failure to arrest individuals known to have been involved in the kidnapping, and their failure to protect Moore and Dee from harm, are allegations of "law enforcement wrongful acts" occurring in the course of "law enforcement activities." This point is well made by Franklin County in its motion to dismiss, which also notes that the Moore complaint also alleges an "occurrence," which is defined in National Casualty's policy simply as "an event, including contiguous or repeated exposure to substantially the same generally harmful condition." In response to the motion, however, National Casualty does not contend that the Moore complaint does not allege a "law enforcement wrongful act" or an "occurrence." In fact, it does not address this particular issue at all.

Instead, in response to the motion, National Casualty advances what the court considers to be a new, i.e., not previously asserted, basis for its proposed conclusion that it has no duty to defend. National Casualty argues that "in determining whether a requisite 'law enforcement wrongful act' is alleged in the Moore complaint and satisfies the policy's insuring agreement," all policy terms, including "occurrence," "law enforcement wrongful act," and "loss," must be read together; and, it argues, "taken together ... the requirement of 'loss' caused by a 'law enforcement wrongful act' is not met" because the policy

provides that "'loss' will not include ... matters which may be deemed uninsurable under the law pursuant to which this Coverage form is construed," and since the Moore complaint includes allegations of criminal wrongdoing by Hutto and Shell, which are uninsurable under Mississippi law, then it follows that there is no covered "loss" and hence no duty to defend or indemnify.  In other words, National Casualty argues, not that the Moore complaint does not allege a "law enforcement wrongful act" caused by an "occurrence," but rather that the Moore complaint does not allege a covered "loss."  The complaint cannot reasonably be read as making such claim.[3]  However, even if this had been pled as a basis for relief, National Casualty's conclusion that the Moore complaint's allegations of conspiracy to commit criminal activity foreclose coverage and hence any duty to defend, is not sustainable.

Mississippi law holds, as a matter of public policy, that entities cannot purchase insurance for illegal activities.  See Farmland Mut. Ins. Co. v. Scruggs, 886 So. 2d 714, 720 (Miss. 2004).  National Casualty thus argues that because the Moore complaint alleges criminal acts, such as conspiring to commit kidnapping and murder and lying to the FBI, then they have not

---

[3]     National Casualty may have asserted this position in its reservation of rights letter to Franklin County.  However, while the complaint references that letter as an exhibit and purports to incorporate the letter by reference, National Casualty failed to attach the letter as an exhibit to the complaint.

alleged a covered "loss."  Even if the complaint did include

allegations of uninsurable criminal acts, the complaint also

contains allegations that do not fit within the scope of any

public policy against coverage for allegations of illegal acts.

For example, as noted by Franklin County, the complaint alleges

that Hutto and Shell protected certain individuals while not

protecting others, failed to investigate some crimes, denied law

enforcement protection to certain individuals, and misled some

citizens about the whereabouts of their relatives.  The court

agrees with the County that any distinct allegations related to

illegal conduct are inseparable for purposes of the duty to

defend.  See Am. Guar. & Liab. Ins. Co. v. 1906 Co., 273 F.3d 605,

611 (5th Cir. 2001) (where underlying complaint allege multiple

grounds for recovery, insurer "must provide a defense if any

ground falls within the terms of the policy") (citing Equal

Employment Opportunity Comm'n v. Southern Publ'g Co., 894 F.2d

785, 790-91 (5th Cir. 1990) (adopting the general rule that "[a]n

insurer must bear the entire cost of defense when 'there is no

reasonable means of prorating the costs of defense between the

covered and the not-covered items.'").  The court concludes,

therefore, that National Casualty has failed to state a claim that

it has no duty to defend on this basis.

Franklin County next argues in its motion that the Deliberate

Acts Exclusion which National Casualty has invoked to avoid both

its duty to defend and its duty to indemnify is, by its clear terms, inapplicable to the duty to defend, so that National Casualty cannot possibly state a viable claim for declaratory judgment that it has no duty to defend based on this exclusion. This exclusion reads:

> We will not be obligated to make any payment nor to defend any "suit" in connection with any "claim" made against the insured:
> ...
> 2. Arising out of the deliberate violation of any federal, state, or local statute, ordinance, rule or regulation committed by or with the knowledge and consent of the insured. This exclusion applies to both civil and criminal charges filed against the insured in his or her official or individual capacity if the charges result in an obligation to pay damages, a plea of guilty, a verdict of guilty, a sentence or plea of no contest.

With respect to this exclusion, National Casualty's complaint alleges only that Franklin County is not entitled to a defense or indemnity against the Moore lawsuit because the policy excludes coverage for any suit or claim arising out of the deliberate violation of any federal statute committed by or with the knowledge or consent of the insured. But as Franklin County correctly argues, National Casualty's apparent position that the exclusion applies because the Moore complaint alleges deliberate violations of federal laws, ignores the second sentence of the exclusion, which expressly states that the exclusion applies to civil and criminal charges filed against the insured "*if the charges result in an obligation to pay damages, a plea of guilty,*

14

*a verdict of guilty, a sentence or plea of no contest.*" (Emphasis added). See Young, 2009 WL 2170105, at 4 (observing that the emphasis of the exclusion is on "the deliberate nature of a violation of the law and any resulting plea or verdict"). The Moore lawsuit undeniably asserts civil charges against the County for alleged deliberate violations of federal statutes; but there is no allegation in either National Casualty's complaint or the underlying Moore complaint that there has been either a criminal plea by or conviction of the alleged actors involved in the alleged deliberate violations of the law or a civil judgment against them or the County. Given the absence of such an allegation, National Casualty has failed to state a viable claim for applicability of the Deliberate Acts Exclusion to the duty to defend.[4]

In addition to the Deliberate Acts Exclusion, National Casualty has also invoked the Prior Knowledge Exclusion, which it contends plainly relieves it of any duty to defend or indemnify Franklin County as to the claims in the underlying Moore lawsuit. This exclusion states, "We will not be obligated to make any payment nor to defend any 'suit' in connection with any 'claim'

---

[4]    The court notes that, although Franklin County's motion to dismiss clearly challenges the sufficiency of National Casualty's reliance on the Deliberate Acts Exclusion as a basis for its claim that it has no duty to defend, National Casualty's response does not acknowledge the County's argument on this issue or so much as mention this exclusion.

made against the insured ... [a]rising out of ... [a]ny 'law enforcement wrongful act' which takes place prior to the 'policy period' if the insured had knowledge of circumstances which could reasonably be expected to give rise to a 'claim.'...."  The policy period for purposes of the exclusion is from February 6, 2008 to February 6, 2009, since that is the policy period in which the Moore claim was asserted.  National Casualty argues that it has sufficiently pled applicability of the Prior Knowledge Exclusion, as the allegations of both its complaint and the Moore complaint, taken as true, demonstrate that more than forty years prior to the policy period, Franklin County had knowledge of circumstances which could reasonably be expected to give rise to a claim.  In this regard, National Casualty reasons that since it is plainly alleged in the Moore complaint that the acts which gave rise to the claims therein were committed by Hutto and Shell, agents of Franklin County, and, since their knowledge as agents of the County is imputed to the County as a matter of law, and since those acts which gave rise to the Moore complaint occurred in the 1960s, i.e., long before the policy period, it follows that, prior to the policy period, Franklin County had knowledge of circumstances which could reasonably be expected to give rise to a claim.

In support of its motion to dismiss, Franklin County argues that for purposes of the Prior Knowledge Exclusion, constructive

or imputed knowledge the County may have had more than forty years prior to the policy period–which is the only knowledge suggested by the Moore complaint–is irrelevant.  Rather, in assessing the potential applicability of the exclusion, the only relevant knowledge is the County's actual, subjective knowledge at the time it purchased the policy – or rather at the commencement of the policy period at issue, i.e., as of February 6, 2008.  According to the County, since there is no allegation, nor hint of an allegation, that *at the time it secured the coverage for the subject policy period*, any Franklin County official or employee had any knowledge of the facts or circumstances that form the basis of the Moore lawsuit (or put another way, since there is no allegation that any Franklin County official or employee at the time the policy was purchased was aware of Hutto's and Shell's alleged misdeeds some forty years earlier), then it cannot plausibly be contended that the exclusion applies to the claims in the Moore lawsuit.  The County further argues, though, that even if the allegations in the Moore complaint of Hutto's and Shell's misdeeds in 1964 could arguably satisfy the *knowledge* requirement for application of the Prior Knowledge Exclusion, the allegations are nevertheless patently insufficient to support a finding that the exclusion is potentially applicable, since the allegations in neither the National Casualty complaint nor the Moore complaint suggest any basis for a finding that prior to the policy period,

the County could reasonably have expected a claim would be made against it based on the circumstances of which it allegedly had knowledge when it purchased the coverage.

The plausibility of National Casualty's claim for declaratory judgment that the Prior Knowledge exclusion applies so that it has no duty to defend or indemnify, depends on this court's interpretation of the substance of the relevant exclusion. Courts interpreting similar Prior Knowledge Exclusions have consistently held that the analysis for determining whether the exclusion applies entails both a subjective and an objective inquiry, which involves the subjective question of whether the insured was in fact aware of the circumstances giving rise to the claim prior to the start of the policy period, and an objective analysis of whether a reasonable person would foresee that those circumstances might be the basis of a claim. See, e.g., Coregis Ins. Co. v. City of Harrisburg, No. Civ. A. 1:03-CV-920, 2005 WL 2179734 (M.D. Pa. Sept. 9, 2005); Westport Ins. Corp. v. Cotten Schmidt, LLP., 605 F. Supp. 2d 796, 803-05 (citing cases). The court predicts that Mississippi courts would similarly interpret the subject exclusion. With this construction in mind, in the court's opinion, the policy's Prior Knowledge Exclusion cannot reasonably be interpreted to apply on the facts alleged.

The only subjective knowledge arguably alleged in the Moore complaint, upon which National Casualty relies, is the subjective

knowledge of a Franklin County official and employee, Hutto and

Shell, during their respective tenures with the County in the

1960s.[5] There is no allegation that any current, or even recent,

Franklin County official or employee was subjectively aware of

Hutto's and Shell's actions in 1964.[6] As Franklin County notes,

the Prior Knowledge Exclusion is an embodiment of the known-loss

doctrine, see HSB Group, Inc. v. SVB Underwriting, Ltd., 664 F.

Supp. 2d 158, 182 (D. Conn. 2009), which has been described as

> a compilation of practical concepts intended to prevent
> a windfall for insureds and manifest unfairness for the

---

[5]     Although there is an allegation in the Moore complaint
that Franklin County had a policy in 1964 of protecting the Klan,
it is not clear whether this alleged policy is based on the
actions of Hutto, who is alleged to have been the County's final
law enforcement policymaker.  In any event, the court does note
that there is no allegation that any Franklin County official or
employee, other than Hutto and Shell themselves, was ever aware of
Hutto's and Shell's alleged involvement in the Moore/Dee matter.

[6]     National Casualty points out in its response that the
Moore complaint references the fact that in his January 2007
testimony before the grand jury that indicted James Seale, Charles
Edward implicated Hutto and Shell in the crimes that are the basis
for the Moore claims.  National Casualty declares that since this
testimony is in the public record, and was given in January 2007,
prior to the policy period beginning in 2008, "this is another
reason Franklin County cannot credibly say NCC's claim for relief
under the prior knowledge exclusion is not plausible on its face."
However, grand jury testimony is not a matter of public record.
And, although the indictment was returned in January 2007, the
only reference in the indictment to Hutto is a single statement
that "after extracting false information from Dee and Moore, WKKKK
members known to the grand jury traveled to a church in Roxie,
Mississippi where they unsuccessfully searched for firearms with
the local sheriff."  Knowledge that the sheriff participated in a
search with members of the Klan is not knowledge that the sheriff
conspired with the Klan or otherwise participated in wrongdoing in
connection with the kidnappings and murders.

insurance industry.  An often cited decision of the
California Supreme Court held that "as long as there
remains uncertainty about damage or injury that may
occur during the policy period and the imposition of
*liability* upon the insured, and no legal obligation to
pay third party claims has been established," then there
is no "known loss."  <u>Montrose Chem. Corp.</u>, 10 Cal. 4th
at 655, 42 Cal. Rptr. 2d 324, supra, 913 P.2 878.  Some
decisions also refer to the "known loss" doctrine as the
"loss-in-progress" rule.  <u>Id.</u> at 904.  The known loss
doctrine is also related to the "fortuity" doctrine.
<u>Alcoa v. Aetna Cas. & Sur. Co.</u> (2000), 140 Wash. 2d 517,
998 P.2d 856, 878.  All of these concepts are premised
upon the simple idea that, normally, one cannot buy
insurance coverage for a loss already known to be in
progress, or for a loss that the insured planned,
intended, or is aware is substantially certain to occur.
43 American Jurisprudence 2d (2004).

<u>Buckeye Ranch, Inc. v. Northfield Ins. Co.</u>, 134 Ohio Misc. 2d 10,

23 (Ohio Com. Pleas 2005).  In the court's opinion, considered in

the light and context of the purpose of the exclusion, the

requirement of subjective knowledge necessarily refers to the

actual knowledge possessed by the insured at a relevant point in

time, i.e., when the coverage is procured for the policy period.

Thus, in the court's opinion, the knowledge of Hutto and Shell,

agents of Franklin County whose knowledge was imputed to the

County, that in 1964, they had engaged in the misdeeds identified

in the Moore complaint, is not pertinent knowledge of the County

for purposes of the Prior Acts Exclusion.  As there is no

allegation from which it could reasonably be inferred that

Franklin County officials were aware of Hutto's and Shell's acts

*when the coverage was procured*, then there is no allegation of the

kind of subjective knowledge required to support application of
the exclusion.

Having said that, even if the knowledge which the County is
alleged to have constructively possessed in 1964 were sufficient
to satisfy the subjective knowledge requirement of the exclusion,
the exclusion requires more than mere knowledge of circumstances
that ultimately lead to a claim.  The exclusion applies only if
the circumstances of which the County had knowledge would have
caused a reasonable person to expect that the County faced a
potential claim.  That is hardly the case here.  See Harrisburg,
2005 WL 2179734, at 8 (court could not find that facts and
circumstances of which county officials may have been aware in
2001 and 2002 regarding alleged law enforcement malfeasance in
1970s would have caused a reasonable person to believe that a
claim would be brought against the County itself).  Assuming the
County knew at the time it obtained the subject coverage that in
1964, a former sheriff and deputy sheriff had engaged in the acts
identified in the Moore complaint, one could not reasonably have
predicted on the basis of this knowledge that a claim against the
County would be forthcoming.  As the County aptly puts it, even if
it was aware of misdeeds by its Sheriff's Department in 1964, it
is unreasonable to conclude that the County could have reasonably
expected that a civil lawsuit might be filed against it in 2008,
particularly since there apparently had been no indication in the

intervening forty years that a lawsuit was forthcoming. For these reasons, the court concludes that National Casualty has failed to plead a claim for declaratory judgment that it has no duty to defend based on the Prior Knowledge Exclusion.

Based on all of the foregoing, the court concludes that National Casualty's claim for a declaratory judgment that it has no duty to defend Franklin County in the underlying Moore case should be dismissed. Franklin County urges that such dismissal should be with prejudice, since National Casualty cannot possibly plead facts that would relieve it of the duty to defend. While this would appear to be true to the extent of National Casualty's reliance on the alleged absence of any allegation of "law enforcement wrongful acts," or "occurrence" or covered "loss," and as to its argument based on the Deliberate Acts Exclusion, National Casualty suggests that even if the court concludes that its present complaint does not state a claim for relief based on the Prior Knowledge Exclusion, there exists the possibility that it could state a claim for relief based on this exclusion, so that any dismissal should be without prejudice. The court agrees, and therefore, dismissal of the Prior Knowledge Exclusion claim will be without prejudice.

Finally, Franklin County has argued National Casualty's claim seeking a declaratory judgment that it has no duty to indemnify should be dismissed, or, alternatively, stayed pending the outcome

of the Moore case.  The court agrees, and therefore, the "no duty to indemnify" claim will be stayed.

SO ORDERED this 29th day of April, 2010.


                                    /s/ Tom S. Lee
                                    UNITED STATES DISTRICT JUDGE